LAVALL T. LEE,

          Plaintiff,

     v.                                         Case No. 19-C-614

ARMOR CORRECTIONAL HEALTH SERVICES,
BRITTANY WYSOCKI, and
MILWAUKEE COUNTY,

          Defendants.

## DECISION AND ORDER DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS

      Plaintiff Lavall T. Lee, a prisoner who is representing himself, filed this action under 42 U.S.C. §1983, alleging that Defendants violated his constitutional rights while he was incarcerated at the Milwaukee County Jail. The case is before the Court on the parties' cross-motions for summary judgment. For the reasons explained in this decision, the Court will deny Lee's summary judgment motion, grant Defendants' summary judgment motions, and dismiss this case.

## BACKGROUND

      Lee was incarcerated at the Milwaukee County Jail from January 2018 until December 2018. Dkt. No. 210 at ¶9. During that time, Defendant Armor Correctional Health Services provided medical care for the inmates. Dkt. No. 169 at ¶9. Prior to his incarceration, Lee experienced gastrointestinal issues including an H. pylori infection (caused by bacteria infecting the stomach), which was treated with antibiotics in 2016. Dkt. No. 210 at ¶10; Dkt. No. 169 at ¶¶24-28. In April 2018, Lee's issues resurfaced, and he began experiencing stomach pain, blood in his stool, and a burning sensation during bowel movements. Dkt. No. 213 at ¶¶30-31. He was

called to health services and advised that he suffered from acid reflux and constipation. Dkt. No. 169 at ¶33. He was provided with pills for the reflux and a laxative for the constipation, neither of which provided him relief. *Id.* at ¶34. Lee's symptoms continued to progress, and he continued to submit medical slips seeking medical care. *Id.* at ¶¶35-36.

On August 23, 2018, Lee submitted a sick call slip to the health services unit complaining of blood in his stool and abdominal pain and requesting that he be seen. Dkt. No. 210 at ¶¶215-16. Defendant Brittany Wysocki, a nurse, received the slip, performed an in-person assessment of Lee, and, consistent with procedure, scheduled an appointment with the provider for the next day, August 24. *Id.* at ¶¶16-20, 22.[1] During her August 23 assessment, Wysocki talked to Lee about his symptoms, took his vitals, and noted that Lee did not appear to be disoriented or in acute distress. *Id.* at ¶21; Dkt. No. 180-3.

On August 24, 2018, Lee asserts that he woke up to use the bathroom. Dkt. No. 169 at ¶42. He states that he was in a great deal of pain, may have fainted, and saw a lot of blood in the toilet. *Id.* at ¶43. In response to another inmate's call, Correctional Officer Hebbe (not a defendant) came to Lee's cell and saw blood in the toilet. *Id.* at ¶¶44-45; Dkt. No. 213 at ¶45. Hebbe called health services to ask that an appointment for Lee be prioritized, and Wysocki informed her that a nurse practitioner (not a defendant) already had an appointment scheduled with Lee later that day and that his current circumstances were not considered a medical emergency. Dkt. No. 210 at ¶26; Dkt. No. 169 at ¶52. After Hebbe informed Lee of Wysocki's response, Lee asked Hebbe to call the lieutenant on duty. Dkt. No. 169 at ¶47. Hebbe complied, and a lieutenant and three sergeants (none of whom are defendants) came to check on Lee. *Id.* at ¶48.

---

[1] In his response to Armor and Wysocki's proposed statements of fact, Lee consistently misunderstands and incorrectly interprets his medical records by confusing the times that events were charted with the times that events actually occurred. *See, e.g.*, Dkt. No. 210 at ¶¶20-21. This confusion led Lee to conclude that Defendants had manipulated his records. The Court has been presented with no evidence to support such a conclusion.

2

Lee was seen by Nurse Practitioner Brandon Decker (not a defendant) later that day. Dkt. No. 210 at ¶27. According to Lee, he asked Hebbe for help at about 10:00 a.m. and was seen by Decker at some time after noon. *Id.* Decker referred Lee to GI Associates, an outside provider, who saw Lee on September 5, 2018. *Id.* at ¶31; Dkt. No. 180-8 at 1. Lee was seen at Wheaton Franciscan Healthcare on October 5, 2018, to have a colonoscopy and an endoscopy, after which he was diagnosed with moderate-sized internal hemorrhoids and mild erythema (a reddening of the skin) of the rectum. Dkt. No. 169 at ¶38; Dkt. No. 205-2 at 1. On November 22, 2019, during a follow-up visit with Dr. Ulitsky, Lee was informed that no diverticulosis (a condition where small pockets or pouches are in the wall or lining of the digestive tract) was observed at his previous colonoscopy. *Id.* at ¶7. On October 6, 2020, Dr. Alex Ulitsky of GI Associates, wrote a letter to Lee to inform him that his labs were negative for H. pylori. Dkt. No. 215 at ¶6.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly

entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Lee asserts that Wysocki was deliberately indifferent to his serious medical needs when she failed to respond to his increasingly serious symptoms of rectal bleeding and severe stomach pain. *See* Dkt. No. 44 at 5; Dkt. No. 9 at 5. He also asserts that he was constitutionally injured by a Milwaukee County policy that prevents officers from declaring medical emergencies and by an Armor policy that allows medical staff to assess the severity of an inmate's condition based only on an officer's statements. Dkt. No. 185.

### 1. Nurse Brittany Wysocki

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment. It asks (1) "whether a plaintiff suffered from an objectively serious medical condition" and (2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). There is no question that Lee's severe stomach pain and rectal bleeding are sufficient for a jury to conclude that he suffered from an objectively serious medical condition. However, based on the record before the Court, no jury could reasonably conclude that Wysocki was deliberately indifferent to that condition.

4

Before addressing the merits of Lee's claim against Wysocki, the Court finds it necessary to clarify the scope of that claim. Although Lee presents evidence that he had been complaining about his worsening symptoms since April 2018, there is no evidence to support a conclusion that Wysocki was aware of those complaints or involved in responding to those complaints. Under §1983, a person is liable for damages only if she was personally responsible for the deprivation of a constitutional right. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Because there is no vicarious liability, Wysocki will not be held responsible for the alleged misconduct of others. Accordingly, Lee's claim against Wysocki is limited to her response to his condition on August 23 and 24, 2018. Whether others were deliberately indifferent to his condition prior to or after those dates is not before the Court.

The evidence shows that, on August 23, Lee complained of stomach pain and rectal bleeding. In response, Wysocki charted Lee's sick call slip and performed an in-person assessment. During the assessment, Wysocki learned from Lee that he had blood in his stool and on the toilet paper when he used the bathroom, but there was no blood on his underwear. She also learned that the pain, which he rated a 10/10, had started months ago and nothing relieved it. Finally, she looked in Lee's toilet at his request and observed some blood, with the majority being on the toilet paper. Dkt. No. 180-3. Wysocki then reported her assessment to a nurse practitioner, charted the assessment, and scheduled Lee for a follow-up appointment with a nurse practitioner the next day. No jury could conclude from Wysocki's thorough and prompt response to Lee's complaints that she was deliberately indifferent to his condition on August 23.

The next morning, at about 10:00 a.m. (Dkt. No. 188 at ¶11), Lee reported similar, albeit more severe, complaints. During a bowel movement there was a lot of blood and he was in a lot of pain. He was laying on his cell floor, apparently unable to move. The responding officer called

Wysocki, who informed her that she was aware of Lee's symptoms because she had assessed his condition the day before and that he had an appointment with a nurse practitioner later that day. Lee disagrees with Wysocki's response. He insists that she should have declared a medical emergency based on the officer's report or sent medical staff to his cell to do an independent assessment of his worsening condition. He asserts that a jury could conclude that, by failing to do either, Wysocki was deliberately indifferent to his condition. Lee's assertion is without merit.

Wysocki already knew from her assessment the day before that Lee had severe stomach pain and that he was bleeding during bowel movements, and she had already determined that those symptoms necessitated additional evaluation by a nurse practitioner. Accordingly, she had scheduled an appointment for Lee with a nurse practitioner, an appointment she knew would take place just a few hours later. Lee insists that, rather than waiting for that appointment, Wysocki should have declared a "medical emergency" (a phrase he never defines), but he presents no evidence showing how such a declaration would have resulted in him receiving treatment different from what he was already set to receive.

"In order to succeed in a §1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'" *Gabb*, 945 F.3d at 1032 (citations omitted). No jury could reasonably conclude that Lee was injured by Wysocki's failure to declare a "medical emergency" (whatever that may mean) or repeat an assessment that she had just performed the day before for the same symptoms. Lee presents no evidence to suggest that, had Wysocki done either, he would have received care different from what he eventually received just a few hours later—namely, an examination by a nurse practitioner.

The outcome of the nurse practitioner's examination further confirms that Lee was not injured by Wysocki's response. The nurse practitioner did not send Lee to the hospital; instead,

he made an urgent referral to GI Associates. But that appointment did not happen until about two weeks later, and Lee provides no evidence supporting a conclusion that the appointment would have occurred sooner had Wysocki responded to the officer's call in the way Lee demands. In short, Wysocki's response on August 24 had no impact on the treatment Lee received. As such, Lee's claim against Wysocki fails "on the basic proposition that he has sued for damages under §1983 and alleged a constitutional tort (an Eighth Amendment violation) without then developing evidence of a recoverable injury." *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020). Wysocki is entitled to summary judgment.

### 2. Armor Correctional Health Services and Milwaukee County

Lee's claims against Armor and Milwaukee County fail for similar reasons. Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), municipalities and other local governments are liable for an employee's conduct if the employee injured the plaintiff in execution of an official policy, custom, or widespread practice. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Petty v. City of Chi.*, 754 F.3d 416, 424 (7th Cir. 2014). "Private corporations acting under color of state law may, like municipalities, be held liable for injuries resulting from their policies and practices." *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014) (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012)).

Therefore, to maintain a §1983 claim against a municipal entity, a plaintiff must first identify a "policy or custom" attributable to governmental policymakers. *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 691-94). He must then demonstrate "the requisite causation," which means that "the policy or custom was the 'moving force' behind [his] constitutional deprivation." *Id.*

7

Lee asserts that Milwaukee County has a policy that prevents officers from declaring medical emergencies and that Armor has a policy of allowing medical staff to assess the severity of an inmate's condition based only on officers' statements (as opposed to in-person assessments). Lee's claims against Armor and Milwaukee County fail because, even assuming such policies exist (and the Court makes no finding on that point), Lee fails to present evidence from which a jury could reasonably conclude that he suffered a constitutional injury as a result of the alleged policies. As to Milwaukee County's alleged policy, the Court has already explained why Lee was not injured by his condition not being declared a "medical emergency." Lee was examined by a nurse practitioner just a few hours after he complained to the officer, and the nurse practitioner referred him to GI Associates; that appointment occurred about two weeks later. Lee presents no evidence suggesting that the declaration of a "medical emergency" would have resulted in materially different treatment.

Lee also fails to show that he was injured by Armor's alleged policy of allowing medical staff to assess the severity of a prisoner's condition based only on officers' statements. Even if such a policy exists, Lee makes no argument that Hebbe misrepresented his condition to Wysocki when she spoke to her on the telephone. To the contrary, Lee asserts that "Hebbe pleaded with nurse Brittany for Lee to be prioritized and moved to the top of the list to be seen in the HSU for his medical condition." Dkt. No. 185 at 2. Given Lee's assertions that Hebbe accurately relayed the severity of his condition to Wysocki, no jury could reasonably conclude that Lee was harmed by an alleged policy that allowed Wysocki to make her assessment based on Hebbe's accurate statements. In other words, because there is no evidence suggesting Wysocki would have learned anything different or made a different decision had she observed Lee in person rather than relying on Hebbe's statements, Lee fails to show he was injured by the policy.

8

Case 2:19-cv-00614-WCG    Filed 08/31/21    Page 8 of 10    Document 220

Lee argues that these policies are "dangerous" because "some people could die." Dkt. No. 185 at 3. This statement suggests that Lee wants to recover money damages solely for the risk to his life. But "[t]hat risk is not compensable without evidence of injury," *Lord*, 952 F.3d at 905, and Lee has supplied no evidence that he suffered any constitutional injury on August 24, 2018 as a result of these policies. Accordingly, Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, Lee's motion for partial summary judgment (Dkt. No. 162) is **DENIED**; Defendants' motions for summary judgment (Dkt. Nos. 168, 176) are **GRANTED**; Lee's motion for compensatory damages, punitive damages, and treble damages (Dkt. No. 200) is **DENIED as moot**; and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 31st day of August, 2021.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.